## Illinois Central R. R. Co. v. Vincent Satkowski.

1. PRACTICE—*Duty of Court Where Motion is Made to Take the Case from the Jury.*—When a motion to take the case from the jury is made, it is the duty of the court to see if there is evidence in the case which, with all its reasonable intendments and inferences, fairly tends to make out the plaintiff's case. If there is, it is the duty of the court to submit the question to the jury.

2. SAME—*Duty of Court upon Motion for a New Trial on the Ground that the Verdict is Not Justified by the Evidence.*—When a motion for a new trial upon the ground that the verdict is not justified by the evidence is being considered, it is the duty of the court to determine whether or not the verdict is clearly against the weight of the evidence. If it is, he should grant the motion. If it is not, he should deny the motion.

3. VERDICT—*When This Court Should Set it Aside.*—It is the duty of this court to set aside a verdict and grant a new trial where the ver-

dict is so clearly against the weight of the evidence as to indicate passion or predjudice upon the part of the jury.

4. MASTER AND SERVANT—*Servant Assumes Known and Ordinary Dangers.*—An employe assumes all the known and ordinary dangers of his employment. If the danger is open and obvious, so that by the exercise of ordinary care in the use of machinery or in working with it, he will have knowledge of such danger, he is bound to take notice of it, and he will not be heard to say that he had not such knowledge.

5. SAME—*Servant Knowing Dangers Attendant upon Use of Machinery and Continuing in Service, Assumes the Risk.*—Where the danger is inherent in the construction or use of the machinery, and plaintiff knew the construction of the machinery and the danger attendant upon its use, and continued in the service, he is deemed to have assumed the risks and to have waived all claims against the master for damages arising out of his personal injury.

6. PLEADING—*Cause of Action Can Not be Founded on Defect Not Alleged in Declaration.*—Where the declaration does not allege a defective or dangerous condition of an appliance no cause of action can be founded upon such condition.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge presiding. Heard in this court at the October term, 1902. Reversed and remanded. Opinion filed April 20, 1903.

**Statement.**—Appellee was an employe of appellant at its roundhouse in the city of Chicago. He was what is known as an ash-pit cleaner. There were two ash-pits at this plant, known as the east and the west pit, but it is the east pit only which is referred to in this case. This pit is divided in the center. It is the north half of the ash-pit which is involved in this case. The ash-pit is a space dug out to a depth of about four feet, between two railroad tracks, the space narrowing toward the bottom to a width of about two feet and six inches. The sides and bottom are concrete. A foot or more from the bottom is a layer of iron grates made in sections about three feet long and twenty-six inches wide. These grates were heavy cast iron, about two inches thick, and contained holes about five inches square. In the space between these grates and the bottom of the pit is a large worm or screw, which, when operating, carries the ashes to the center of the pit, where they are dropped into a hole and from thence elevated to

cars to be carried away. Each of the iron grates is covered with a movable, heavy sheet iron plate, and each plate had a large ring attached to one end. The principle on which the ash-pit is operated is this: The grates being covered with the plates, the ashes from the engines would be dropped down into the pit. When the pit was full, a man would stand at one end, and with a long hoe having a hook attached to it would catch the ring in one of the plates and pull it toward him, exposing one section of the grate. He would then pull down the ashes and cinders with his hoe onto the exposed grate, and push them through the five-inch hole down upon the worm or screw beneath, which, revolving, would carry them toward the center. The man working in the pit would thus proceed, pulling out each time a plate to stand on, and again pulling down the ashes and cinders, and thus proceeding until the pit was empty. At all times he had a plate to stand on. At the center of the pit is what is known as the gearing or boxing. The grate at this center was about one-half the length of the ordinary grate, so constructed as to leave an open space over the gearing for access to the machinery. This hole was covered by a sheet-iron plate similar to the others, except raised in the center somewhat, making it of a slightly conical form.

The declaration proceeded upon the theory that one of the grates was broken, that appellant knew it, or ought to have known it, and that appellee did not know it, and had not as good an opportunity to know it as did appellant.

It is not disputed but that in the afternoon of July 4, 1900, the appellee began working at the north end of the pit, pulling the ashes down upon the grates and through them to the revolving screw; and that when he came near the center of the pit his leg went down through a hole or in a space between the grates, and was caught and mangled by the screw to such an extent that it had to be amputated.

The evidence presented by appellee tended to show that there was a hole in one of the grates about fifteen by twenty-

two inches; that it had been there for at least sixty days before the accident; and that appellee stepped or slipped into this hole.

The evidence of appellant tended to show that there was no broken grate, but that the short grate next the center had been pushed over the gearing, thus leaving a space between the grates, into which appellee fell; and that the machine was in the form constructed by the manufacturer, the short grate being necessary for access to the gearing, the whole being perfectly safe when the grates and the plates were in position.

At the close of the case for appellee, appellant moved the court to take the case from the jury, which motion was refused.   It was renewed at the close of all the evidence, and was again refused.   The jury returned a verdict in favor of appellee for $3,500.   They also returned two special findings, namely:

" Do you find from the evidence that the plaintiff, by the exercise of ordinary care for his own safety, could have prevented the injury complained of ?   No.

Do you find from the evidence that the plaintiff, by the exercise of ordinary care and observation, could have seen the hole in question at any time before he was injured ? No."

A motion for new trial having been denied, judgment was rendered upon the verdict, from which this appeal is prosecuted.

W. A. HOWETT, attorney for appellant; J. G. DRENNAN, of counsel.

WHITE & MABIE and W. F. CONKEY, attorneys for appellee.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

The question in this case is this:   Should the learned judge have granted a new trial upon the ground that the verdict is clearly against the weight of the evidence ?

When the motion to take the case from the jury was made, it was the duty of the court to see if there was evi-

dence in the case which, with all its reasonable intend-ments and inferences, fairly tended to make out the plaintiff's case. If there was, it was the duty of the court to submit to the jury the question of negligence on the part of the defendant and of due care upon the part of the plaintiff, as alleged in the declaration. Chicago City Ry. Co. v. Martensen, 198 Ill. 511.

But when the motion for a new trial upon the ground that the verdict is not justified by the evidence is being considered, it is then the duty of the court to determine whether or not the verdict is clearly against the weight of the evidence. If it is, he should grant the motion. If it is not, he should deny the motion. This rule is so well settled that the citation of authorities is not needed to sup-port it.

When the trial court overrules such a motion, and the case comes here and the same ground is here urged, it is the duty of this court to examine the evidence, in order to determine whether, under the rule referred to, it is sufficient to sustain the verdict. In prosecuting this inquiry we must give due weight to the fact that the jury saw the witnesses, a privilege not granted to us, but that fact will not relieve us of the duty of setting aside the verdict and of granting a new trial if, in our judgment, the verdict is so clearly against the weight of the evidence as to indicate passion or prejudice upon the part of the jury. Alsop v. O. &. M. Ry. Co., 19 Ill. App. 293; Gehm v. People, 87 Ill. App. 161; Illinois Central R. R. Co. v. Cunningham, 102 Ill. App. 207.

The preponderance of the evidence is that appellee had been constantly working in these ash-pits for two months prior to his injury; that he alone did this work, and no one else had anything to do with the ash-pits. The grates which were above the screw, if perfect and in place, pre-vented his foot from dropping down upon the screw. Over these grates there was a layer of iron plates upon which the ashes rested. When appellee had to clear out the ashes he started in at one end of the pit and removed the end

plate by pulling it toward him, thus exposing one of the grates. With his hoe he drew the ashes within reach down upon the grate, and they fell through the five-inch aperture upon the screw. He then pulled another plate toward him, thereby exposing a second grate, and thus continued the work until he had emptied one-half of the pit. By a repetition of this process he removed the ashes from the other half of the pit. In doing this work in this manner he always had a plate to stand upon, and beneath that and above the screw there was always a grate, if it was perfect and in place, to protect him from the screw.

The evidence of plaintiff's witnesses is to the effect that one of the grates was broken, the hole being about fifteen by twenty-two inches; that this hole had been there for from sixty to seventy-five days. A. Snider says everybody was talking about it. All of them could see it plainly when near the edge of the pit. Kingston saw this hole "a couple of hundred times; it was easy to see." He had heard Foreman Bennett and Tennant, who had charge of the pit, talk about this hole six weeks before the accident. But appellee claimed that he had never seen that hole and did not know it was there, although he had daily uncovered every grate in that pit, and, if the grate was broken as described, he had raked the ashes down that large hole at least fifty times before he was hurt. It is undoubtedly true that at times, while he was working, there was much steam and dust in the pit, but that such a hole could have been in one of those grates and be the common topic of conversation among his fellow workmen for two months' time and appellee not be aware of its existence, passes the bounds of credulity. His statement in rebuttal, in the answer of "no" to the question, "You knew how to do the work properly, didn't you?" does not create a favorable impression upon our minds.

An employe assumes all the known and ordinary dangers of his employment. If the danger is open and obvious, so that by the exercise of ordinary care in the use of the machinery or in working with it, he will have knowledge

of such danger, he is bound to take notice of it, and he will not be heard to say that he had not such knowledge. Armour v. Brazeau, 191 Ill. 126. If, on the contrary, there was no broken grate, and the danger was inherent in the construction or use of the machinery, and appellee knew the construction of the machinery and the danger attendant upon its use, as we think is clearly shown by the preponderance of the evidence, and continued in the service, as he did, he is deemed to have assumed the risks and to have waived all claims against appellant for damages arising out of his personal injury. Browne v. Siegel, Cooper & Co., 191 Ill. 233.

It is certain that there was upon the day of his injury a space between two of these grates, or a hole in one of the grates, through which the foot of this unfortunate man passed down to the screw. But that such aperture was a break or hole in one of the grates, is far from being proven. The evidence of five unimpeached and intelligent witnesses, who examined the pit right after the accident, tends to show that none of the grates were broken. They further say that such an opening would be made by pushing the short grate next the center under the plate covering the gearing; and that when they made their examination this condition existed. Courts are slow to charge witnesses with perjury; nor will they do so when their evidence can be otherwise reasonably explained. From a careful examination of the record we are of the opinion that the hole the witnesses for the plaintiff so plainly saw from the edge of the pit, was the open space caused by pushing the short grate, or the two grates nearest the center, to the south.

No other person than appellee had to do with these grates and plates. Each time he removed the ashes it was his duty to replace them and to see that they were in their several places, so that they might securely retain the next discharge of ashes, and so that, in disposing of the ashes, he might work in safety.

It is in evidence that this machinery at the time of the accident was in the same condition as when it was installed

eighteen months prior thereto; that the grate next the center had always been shorter than the others, in order that the gearing might be readily reached, and that while appellee worked in the pit the construction of this machine had not been changed.

Appellee describes the accident in these words: "It was about three o'clock that I stepped on the plate, and my foot slipped and I fell into the hole." The declaration does not allege that the plate was defective, slippery or dangerous; and hence no cause of action can be founded upon the defective, slippery or dangerous condition, if any, of this part of the machinery. Wabash W. Ry. Co. v. Friedman, 146 Ill. 583–589.

The evidence shows that, immediately after appellee was injured, the two plates nearest the hole were found standing on edge at the side of the pit, instead of being drawn back over the grates, which, by the undisputed testimony, was the proper method of handling them as the work progressed.

This is a hard case, since appellee is maimed for life, but we can not bend the settled rules of law so that they shall follow either our sympathies or our desires.

The whole record being considered, we are of the opinion that the case should be submitted to another jury.

The judgment of the Superior Court is reversed and the cause is remanded.